Erin Darling, State Bar No. 259724
LAW OFFICES OF ERIN DARLING
Erin@ErinDarlingLaw.com
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiff
LISTON GRACE

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISTON GRACE,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, CHIEF MICHEL MOORE in his official capacity, and DOES 1 TO 10, in their official and personal capacities,<br><br>          Defendants. | Case No. 21-3119<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF CIVIL RIGHTS UNDER 18 U.S.C. § 1983**<br><br>**DEMAND FOR JURY TRIAL** |

## INTRODUCTION

1.     On or around April 8, 2020, Plaintiff Liston Grace was a victim of a hit-and-run accident on Imperial and Figueroa Street in the city of Los Angeles. When defendants, Los Angeles Police Department officers, arrived at the scene of the accident Mr. Grace's damaged vehicle was plainly visible in the street. However, the LAPD officer defendants did not treat Mr. Grace like a victim of a car accident but as a criminal suspect.

2.     Physically and mentally dazed by the accident that he had just experienced, Mr. Grace handed over his driver license as the LAPD officer defendants requested but had difficulty answering the officers' questions and hesitated to stand up as demanded of him. Perceiving Mr. Grace as defiant when he was in fact dazed, the LAPD officer defendants responded quickly and brutally: they handcuffed Mr. Grace,

1

1 threw him to the ground, hit him multiple times and tased him. Onlookers to the

2 violent commotion had assembled nearby and the officers threatened to hurt them if

3 they did not back away.

4     3.     After being beaten by the defendants, Mr. Grace was arrested and

5 transported to a nearby hospital. While receiving emergency medical care, Mr. Grace

6 remained handcuffed. The LAPD officer defendants had placed the handcuffs on his

7 wrists tightly and kept them there even after he complained.

8     4.     Mr. Grace was released from the hospital and then subjected to a felony

9 arrested by the LAPD officers, who then took Mr. Grace to the 77th Street LAPD

10 police station, where he was released less than twelve hours later. The LAPD officer

11 defendants did not have probable cause that any felony occurred and did not have

12 probable cause to arrest him. Mr. Grace was never charged with any felony crime. As a

13 result of the incident, Mr. Grace suffered, *inter alia*, injuries to his wrists, forearm, spine,

14 head, back, and experienced spasms, headaches, seizures.

15     5.     This civil rights action seeks compensatory and punitive damages from

16 defendants for violating rights under the United States Constitution in connection with

17 the assault and wrongful arrest of plaintiff Liston Grace. In physically assaulting and

18 abusing Mr. Grace, the LAPD officers acted in the worst tradition of the LAPD. Mr.

19 Grace, who is African-American, was a victim of a hit and run but was treated like a

20 criminal by the defendants, who are all white or Hispanic LAPD officers. The LAPD

21 officers chose violence so quickly and so brutally because of Mr. Grace's race. In

22 addition, they acted pursuant to a custom/practice that can be summarized as, "hurt a

23 man, charge a man," in that officers' use of force is justified by arresting the victim, and

24 the LAPD's subsequent use of force investigation clears the officers of any

25 wrongdoing. Thus, there is a relationship between an officer's use of force and the

26 officer's number of arrests for charges related to "resisting arrest." The

27 custom/practice of excessive force has been an ongoing problem for decades, and the

28 problem that existed in 2020 was described by the Christopher Commission report,

1  released in 1991, months after the well-publicized beating of Rodney King: "[T]here is

2  a significant number of officers in the LAPD who repetitively use excessive force

3  against the public and persistently ignore the written guidelines of the Department

4  regarding force."[1] The Christopher Commission report further described the

5  custom/practice at issue in this case: "The failure to control these officers is a

6  management issue that is at the heart of the problem. The documents and data that we

7  have analyzed have all been available to the department; indeed, most of this

8  information came from that source. The LAPD's failure to analyze and act upon these

9  revealing data evidences a significant breakdown in the management and leadership of

10  the Department. The Police Commission, lacking investigators or other resources,

11  failed in its duty to monitor the Department in this sensitive use of force area."[2] The

12  defendant LAPD officers' failure to enforce policies designed to prevent excessive

13  force was in accordance with a custom/practice wherein LAPD management failed to

14  discipline their employees for violating those policies, maintained vague and unclear

15  policies, and maintained customs and practices that deviated from written policy.

16                      **JURISDICTION AND VENUE**

17         6.       This case arises under 42 U.S.C. § 1983. Accordingly, subject matter

18  jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. Jurisdiction

19  for the claims based on California law is founded on 28 U.S.C. § 1367(a), which

20  provides this court with supplemental jurisdiction over state law claims that are so

21  related to claims in the action within such original jurisdiction that they form part of

22  the same case or controversy under Article III of the United States Constitution.

23         7.       Plaintiff's claims arise out of a course of conduct involving officials for

24  the City of Los Angeles, which occurred in the County of Los Angeles, State of

25

26  [1] Report of the Independent Commission on the Los Angeles Police Department

27  (Christopher Commission Report)(1991) at iii and 31, *available at*:
    https://archive.org/details/ChristopherCommissionLAPD/page/n5/mode/2up

28  [2] *Id.* at iv.

3

1    California, and within this judicial district. Venue is proper in this district under 28

2    U.S.C. § 1391(b), as this is the district in which a substantial part of the events or

3    omissions giving rise to the claims occurred.

4                                          **PARTIES**

5          8.      Plaintiff Liston Grace (also referred to as "Mr. Grace" and "Plaintiff") is

6    an adult man competent to sue. At all relevant times, plaintiff Grace resided and was

7    located in the County of Los Angeles.

8          10.     Defendant City of Los Angeles (also referred to as "City") is a municipal

9    corporation duly organized under and existing under the Constitution and laws of the

10   State of California. The Los Angeles Police Department ("LAPD") is a local

11   government entity and an agency of Defendant City of Los Angeles, and all actions of

12   the LAPD are the legal responsibility of the City of Los Angeles. The City of Los

13   Angeles is sued in its own right on the basis of its policies, customs, and practices, all of

14   which gave rise to Plaintiff's federal rights claims.

15         11.     Defendant Chief Michel Moore ("Chief Moore"), is and was, at all times

16   relevant to this action, the LAPD police chief and a policymaker for his department.

17   He is sued in his official capacity.

18         12.      Plaintiff is informed, believes, and thereupon alleges that Defendants

19   Does 1 through 10 were LAPD officers and were agents, servants and employees of

20   Defendant City of Los Angeles and/or the LAPD. Plaintiff is currently ignorant of the

21   true names and capacities of Defendants sued herein as Does 1 through 10, inclusive,

22   and therefore sues these Defendants by such fictitious names. Plaintiff will amend this

23   Complaint to allege their true names and capacities when ascertained. As defendants

24   Does 1 through 10 used force against Mr. Grace, the LAPD should have use-of-force

25   records, in addition to any report detailing the felony arrest of Mr. Grace. The

26   individual Doe Defendants are sued in both their individual and official capacities.

27         13.     Plaintiff is informed, believe, and thereupon alleges that at all times

28   relevant hereto Does 1 through 10, in addition to the named Defendants, are

                                              4

1  responsible in some manner for the damages and injuries alleged herein.

2      14.    Plaintiff is informed, believes, and thereupon alleges that at all times

3  relevant hereto Defendants, and each of them, were the agents, servants and employees

4  of the other Defendants and were acting at all times within the scope of their agency

5  and employment and with the knowledge and consent of their principal and employer.

6  At all times Defendants were acting under color of state law.

7      15.    Plaintiff is informed, believes, and thereupon alleges that the practices,

8  policies, and customs of the City of Los Angeles and/or the LAPD caused the unlawful

9  actions against Plaintiff.

10

11                                  **FACTS**

12     16.    Plaintiff Liston Grace repeats and re-alleges each and every allegation in

13  paragraphs 1 through 15 of this complaint with the same force and effect as if fully set

14  forth herein.

15     17.    On or about April 8, 2020, Mr. Grace was involved in a car accident

16  while driving near the intersection of Imperial and Figueroa Street in Los Angeles,

17  California. The car that hit the car that Mr. Grace's car drove away and Mr. Grace was

18  not able to obtain the personal identifying information of the driver that hit him.

19     18.    Mr. Grace exited the vehicle, which was badly damaged and remaining on

20  Imperial Highway. Eventually, an ambulance arrived and the paramedics and Mr.

21  Liston assembled in a parking lot near the intersection of Imperial and Figueroa. While

22  in the parking lot, multiple LAPD police cars arrived on the scene and Doe Defendants

23  1 through 10 began to investigate a potential crime, not assist a victim of a hit-and-run.

24     19.    Doe Defendants 1 through 10 demanded that Mr. Grace hand over his

25  driver license and he complied.  Doe Defendants 1 through 10 began to question Mr.

26  Grace in an aggressive and suspicious manner. Seated because he was dazed from the

27  car accident, Mr. Grace had difficulty answering the questions from Doe Defendants 1

28  through 10 officers' and hesitated to stand up when they demanded that he do so.

1       20.    Mr. Grace was physically and mentally unable to respond with alacrity to

2 Doe Defendants 1 through 10 demands. Their response was swift and brutal: Doe

3 Defendants 1 through 10 handcuffed Mr. Grace, forced him to the ground, and then

4 began hitting and striking him, including a knee to the back. While Mr. Grace was still

5 on the ground and in handcuffs, Doe Defendants 1 through 10 tasered him repeatedly.

6       21.    A crowd of onlookers had assembled in the parking lot during the violent

7 commotion, and Doe Defendants 1 through 10, acting in concert, threatened these

8 onlookers with further violence if they continued to stand nearby as Mr. Grace

9 continued to be pummelled by defendants.

10       22.    Despite having no probable cause to arrest him, Doe Defendants 1

11 through 10 placed Mr. Grace under felony arrest. He remained in handcuffs when he

12 was transported to a hospital to receive medical care for the injuries he suffered at the

13 hands of Doe Defendants 1 through 10. To make matters worse, Doe Defendants 1

14 through 10 refused to loosen the handcuffs on Mr. Grace's wrists during the time he

15 was in their custody.

16       23.    After Mr. Grace received cursory emergency medical attention at the

17 hospital, Doe Defendants 1 through 10 transported him to LAPD's 77th Street police

18 station where he was held for less than 12 hours and then released. Mr. Grace was

19 never charged with a felony despite his felony arrest.

20       24.    As a result of the violence described herein at the hands of Doe

21 Defendants 1 through 10, Mr. Grace suffered, *inter alia*: injuries to his wrists and

22 forearms, abscess, blunt head trauma, multiple contusions, injuries to his spine, spasms,

23 headaches, and seizures.  On information and belief, plaintiff alleges that this incident is

24 not the first occasion that Doe Defendants 1 through 10 have engaged in an improper

25 use of force while employed with the LAPD.

26       25.    If Doe Defendants 1 through 10 had been adequately trained and

27 supervised prior to beating and falsely arresting Mr. Grace, if prior uses of force by

28 Doe Defendants 1 through 10 had been adequately investigated (especially those

1    incidents where the LAPD officers arrest the person who is subject to the use of force),

2    if Doe Defendants 1 through 10 had been disciplined for their prior improper uses of

3    force and/or false arrests of individuals (especially arrests of those have been subject to

4    use of force by LAPD officers), if the LAPD trained its officers in how and when to

5    properly use tasers, if the LAPD adequately disciplined LAPD officers who engaged in

6    unlawful violence against African-American citizens, if the LAPD trained its officers to

7    not engage in dangerous stereotyping wherein Black men are perceived as a threat

8    and/or deserving of  violent retribution in instances when there is an inability to

9    comply with a verbal command, and if the LAPD trained its officers not to join in on

10   violent acts when other LAPD officers are themselves engaging in violence then the

11   physical abuse of plaintiff Liston Grace in this case could have been averted.

12   Furthermore, the LAPD's own statistics evince a problem of anti-Black violence: non-

13   categorical uses of force ("NCUOF") are uses of force that do not involve a shooting

14   or head-strike with a weapon, and a 2019 LAPD review found that Black suspects were

15   involved in 36 percent of these kinds of incidents (868 NCUOF incidents), despite

16   making up just 9 percent of the city of Los Angele's population.[3]

## DAMAGES

18       26.     As a direct and proximate result of aforesaid acts and omissions, and the

19   customs, practices, policies and decisions of the defendants alleged in this complaint,

20   Plaintiff suffered and will continue to suffer great emotional, mental and physical pain

21   and injuries, anguish, fright, nervousness, anxiety, shock, humiliation, indignity,

22   embarrassment, harm to reputation, and apprehension, which have caused and will

23   continue to cause Plaintiff to sustain general damages in a sum to be determined at

24   trial.

25       27.     As a direct and proximate result of the aforesaid acts, omissions, customs,

26   practices, policies and decisions of the aforementioned Defendants, Plaintiff suffered

27   _____

28   [3] LOS ANGELES MAGAZINE, "A Deep Dive into the LAPD's Use of Force Statistics,"
(June 16, 2020), *available at*: https://www.lamag.com/citythinkblog/lapd-use-of-force/

1 the denial of fundamental constitutional rights guaranteed by the Fourth Amendment
2 of the United States Constitution, which have caused Plaintiff to sustain damages in a
3 sum to be determined at trial.

4      28.    As a further direct and proximate result of the aforesaid acts, omissions,
5 customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff
6 incurred and will continue to incur medical expenses as a result of his injuries.

7      29.    As a further direct and proximate result of the aforesaid acts, omissions,
8 customs, practices, policies and decisions of the aforementioned Defendants, Plaintiff
9 suffered past and future losses of income that have caused her to sustain economic
10 damages in a sum to be determined at trial.

11      30.    Doe Defendants 1 through 10, excluding the entity defendants and Chief
12 Moore, acted in a manner that was willful, wanton, malicious and oppressive, with
13 reckless disregard of or in deliberate indifference to and with the intent to deprive
14 Plaintiff of his constitutional rights, and did in fact violate the aforementioned rights,
15 entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the
16 trial in this matter.

17

18 **FIRST CLAIM FOR RELIEF**
19 **Violation of Civil Rights – 42 U.S.C. § 1983**
20 (Fourth Amendment– Against All Individual Defendants)

21      31.    Plaintiff incorporates by reference each and every allegation contained in
22 the foregoing paragraphs as if re-alleged herein.

23      32.    At all relevant times, Plaintiff was not a physical threat to Doe Defendants
24 1 through 10, and did nothing to necessitate the use of force upon him. At no point did
25 Doe Defendants 1 through 10 have probable cause to issue a felony arrest of Plaintiff.

26      33.    Defendants Does 1 through 10, while acting under color of law, physically
27 assaulted Plaintiffs and engaged in the conduct described above, and thereby deprived
28 Plaintiff of his civil rights under the Fourth Amendment to the United States

1  Constitution.

2      34.    The force used by Defendants Does 1 through 10 upon Plaintiff, in

3  particular, by forcing Plaintiff to the ground, hitting him, striking him and tasering him

4  was harmful, unwanted, and excessive. These Defendants' conduct as described above,

5  were unreasonable, unjustified, and offensive to human dignity.

6      35.    Defendants Does 1 through 10, effectuated a felony arrest of Plaintiff

7  without probable cause, in violation of his Fourth Amendment rights

8      36.    The conduct of Defendants Does 1 through 10 was willful, wanton,

9  malicious, or done with reckless disregard for the rights and safety of Plaintiff and

10  therefore warrants the imposition of exemplary and punitive damages.

11      37.    As a result of the conduct of Defendants Does 1 through 10, Plaintiff was

12  harmed.

13      38.    Plaintiff specifically alleges that Defendants' complained of acts and/or

14  omissions, were within each of their control, and within the feasibility of each of them,

15  to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and

16  injury complained of herein by Plaintiffs.

17

18  **SECOND CLAIM FOR RELIEF**

19  **Municipal Liability –Unconstitutional Custom, Practice, or Policy**

20  **42 U.S.C. § 1983**

21  (Against City of Los Angeles, LAPD, Chief Moore and certain Does)

22      39.    Plaintiff incorporates by reference each and every allegation contained in

23  the foregoing paragraphs as if re-alleged herein.

24      40.    The Doe Defendants 1 through 10 acted under color of law and within

25  the course and scope of their employment by the City and LAPD.

26      41.    The Doe Defendants 1 through 10 deprived Plaintiff of his rights under

27  the Fourth Amendmen, as alleged herein.

28      42.    Plaintiff is informed and believes, and thereon alleges that, at all times

herein mentioned, defendants City, LAPD, the relevant policy maker Chief Moore, and relevant City officials, unnamed certain Does (hereinafter referred to collectively as the entity defendants) maintain or tolerate unconstitutional customs, practices, and policies that facilitated the deprivation of Plaintiff's rights under the Fourth Amendment, as alleged herein, including the foreseeable and preventable issue of force and the wrongful arrest of those individuals subject to such use of force

43.     The policies, customs, and practices described above are also evidenced by the victimization of Plaintiff by Doe Defendants 1 through 10, who Plaintiff alleges have a history of excessive uses of force and dishonesty. Entity defendants knew this and did not adequately discipline, train, or restrain Doe Defendants 1 through 10 from further abuse, which led to the harm of Plaintiff as alleged and described above.

44.     Entity defendants had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Said officials acted with deliberate indifference to the foreseeable effects and consequences of these policies, practices and customs with respect to the constitutional rights of Plaintiff and other female inmates similarly situated.

45.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the aforementioned defendants, Plaintiff was injured and sustained damages as alleged above. Accordingly, Plaintiff seeks compensatory damages from all the entity defendants.

**THIRD CLAIM FOR RELIEF**

**Municipal Liability –Inadequate Training/Policy of Inaction**

**42 U.S.C. § 1983**

(Against City of Los Angeles, LAPD, Chief Moore and certain Does)

46.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

47.     At all times mentioned herein and prior thereto, defendant City, LAPD,

1  Chief Moore and certain Does (hereinafter referred to collectively as the entity

2  defendants) had a duty to train, instruct, supervise and discipline their subordinates to

3  assure they respected and did not violate constitutional and statutory rights of those

4  citizens who come in contact with the LAPD, especially victims of car accidents. and to

5  discipline and re-train LAPD officers involved in prior incidents of alleged physical

6  abuse of criminal suspects.

7       48.     Plaintiff is informed and believes, and thereupon alleges, that prior to the

8  incident alleged herein, that entity defendants facilitated, permitted, ratified and/or

9  condoned similar acts of abuse as what Plaintiff experienced, and were deliberately

10  indifferent to the health and safety of Plaintiff. Said defendants knew, or should have

11  reasonably known, of the custom/policy of constitutional violations, in particular the

12  "hurt a man, charge a man" custom personified by arresting those subject to excessive

13  uses of force, and had a duty to instruct, train, supervise and discipline their

14  subordinates to prevent similar acts to other persons, but failed to do so.

15       49.     The training provided by the entity defendants and certain Does was not

16  adequate to train their officers to handle the usual and recurring situations with which

17  they must deal. The entity defendants did not adequately train their officers and staff to

18  prevent, deter, detect, and avoid physical abuse of motorists involved in car accidents.

19       50.     The entity defendants maintained a policy and practice of inaction with

20  respect to the violation of policies designed to prevent or deter physical abuse of

21  motorists involved in car accidents. LAPD officers who engaged in suspicious

22  behavior, or behavior that violated written policy, were inadequately disciplined or

23  otherwise not penalized in connection with physical abuse of motorists involved in car

24  accidents. The entity defendants were deliberately indifferent to the obvious

25  consequences of their failure to train their officers and staff adequately.

26       51.     As a result thereof, Plaintiff's rights under the Fourth Amendment to the

27  U.S. Constitution were violated. As a further result thereof, Plaintiff sustained the

28  injuries and damages alleged herein.

11

52.     The individual defendants and Doe defendants acted under color of law and within the course and scope of their employment by the City and LAPD.

53.     As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and practice of inaction of the aforementioned defendants, Plaintiff was injured and sustained damages as alleged above. Accordingly, Plaintiff seeks compensatory damages from all the entity defendants

**FOURTH CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. §§ 1983, 1988**

**Conspiracy to Violate Civil Rights**

(Against All Individual Defendants)

54.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

55.     This cause of action arises under United States Code, Title 42, Sections 1983 and 1988, wherein Plaintiffs seeks to redress a deprivation under color of law of a right, privilege or immunity secured to himself by the Fourth Amendment to the United States Constitution.

56.     Defendants Does 1-10, and each of them:

(a) had a joint and simultaneous duty to make sure that Plaintiff was not battered or attacked or falsely arrested;

(b) had joint and simultaneous knowledge that Plaintiff was at risk of being battered or attacked or falsely arrested by LAPD officers once Plaintiff was handcuffed;

(c) with such duty, knowledge and a meeting of the minds, took action at the same time and in the same place to collaborate to refuse to protect Plaintiff from attack by LAPD officers. Thus, forming a 'pact of denial' such that not a single LAPD officer at the parking lot at the intersection of Imperial and Figueroa Street on or near April 8, 2020,  did anything to

intervene on Plaintiff's behalf or prevent the physical attack on Plaintiff;

(d) acted as described herein above, in conspiracy with, and with the agreement permission, ratification, and approval of, each other to violate Plaintiff's civil rights as stated herein.

57.    As a result thereof, Plaintiff's rights under the Fourth Amendment to the U.S. Constitution were violated. As a further result thereof, Plaintiff sustained the injuries and damages alleged herein.

58.    The individual defendants and Doe defendants acted under color of law and within the course and scope of their employment by the City and LAPD.

59.    As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and practice of inaction of the aforementioned defendants, Plaintiff was injured and sustained damages as alleged above. Accordingly, Plaintiff seeks compensatory damages from all the entity defendants

**FIFTH CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. §§ 1985(3), 1988**

**Conspiracy to Interfere Civil Rights**

(Against All Individual Defendants)

60.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if re-alleged herein.

561.    This cause of action arises under United States Code, Title 42, Sections 1985(3) and 1988, wherein Plaintiff seeks to redress a deprivation under color of law of a right, privilege or immunity secured to himself by the Fourth and Fourteenth Amendment to the United States Constitution.

62.    Defendants Does 1-10, and each of them conspired to deprive Plaintiff of the Equal Protection of the law, and acted in conspiracy to deprive Plaintiff, a citizen, of his rights under the law. In particular, Defendants Does 1-10 responded to Mr. Grace's inability to verbally or physically respond to certain requests made to him by

1  the LAPD, and because he is African-American, they did not treat him like a motorist

2  in need of assistance, but as a criminal suspect, and despite Plaintiff not doing anything

3  to justify the use of force on him, defendants engaged as a group in excessive use of

4  force, which included striking him repeatedly and tasering him, and then effectuated a

5  felony arrest without probable cause, which further deprived Plaintiff of his

6  constitutional rights.

7       63.    As a result thereof, Plaintiff's rights under the Fourth and Fourteenth

8  Amendment to the U.S. Constitution were violated. As a further result thereof, Plaintiff

9  sustained the injuries and damages alleged herein.

10       64.    The individual defendants and Doe defendants acted under color of law

11  and within the course and scope of their employment by the City and LAPD.

12       65.    As a direct and proximate result of the aforesaid acts, omissions, customs,

13  practices, policies and practice of inaction of the aforementioned defendants, Plaintiff

14  was injured and sustained damages as alleged above. Accordingly, Plaintiff seeks

15  compensatory damages from all the entity defendants.

16  **PRAYER FOR RELIEF**

17  WHEREFORE, Plaintiffs pray for relief as follows against defendants:

18       1.    General and compensatory damages in an amount according to proof;

19       2.    Special damages in an amount according to proof;

20       3.    Exemplary and punitive damages against each individual and Doe

21            defendant, but not against the County or LASD, in amounts according to

22            proof;

23       4.    Cost of suit, including attorneys' fees, under 42 U.S.C. § 1988; and

24       5.    Such other relief as may be warranted or as is just and proper.

25                              **LAW OFFICES OF ERIN DARLING**

26  DATED:  April 9, 2021

27

28                      By:    */s/ Erin Darling*

14

1

Erin Darling
Attorney for Plaintiff,
LISTON GRACE

2

3

4

**JURY DEMAND**

5

Plaintiff Liston Grace hereby demands trial by jury on all issues so triable.

6

7     DATED:  April 9, 2021

**LAW OFFICES OF ERIN DARLING**

8

9

By:     */s/ Erin Darling*
Erin Darling
Attorney for Plaintiff,
LISTON GRACE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15